J. Grady Hepworth, ISB No. 10364
HEPWORTH LAW OFFICES
2229 West State Street
Boise, Idaho 83702
Telephone: (208) 333-0702
Fax: (208) 246-8655
ghepworth@idalawyer.com

Jason T. Dennett (*pro hac vice*)
TOUSLEY BRAIN STEPHENS
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Telephone: (206) 682.5600
Fax: (206) 682.2992
jdennett@tousley.com

*Counsel for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL FERGUSON and PAM GAGE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>   v.<br><br>KOOTENAI HEALTH, INC.,<br><br>                  Defendant. | Case No.  2:24-cv-00421<br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Daniel Ferguson and Pam Gage ("Plaintiffs"), individually, and on behalf of all others similarly situated, bring this action against Kootenai Health, Inc., and its subsidiaries Kootenai Clinic, Kootenai Outpatient Surgery and Kootenai Outpatient Imaging (collectively, "Kootenai Health" or "Defendant"). Plaintiffs bring this action by and through their attorneys, and

**CLASS ACTION COMPLAINT**- 1

allege, based upon personal knowledge as to their own actions, and based upon information, belief, and reasonable investigation by their counsel as to all other matters, as follows.

## **INTRODUCTION**

1.       Kootenai Health is an Idaho-based medical center that provides a range of medical services, including cardiac care, orthopedics, oncology, emergency services, women's and children's services, and behavioral health, to patients in northern Idaho and the Inland Northwest.[1] Kootenai Health's main hospital, located in Coeur D'Alene, Idaho, is licensed for up to 397 beds.

2.       As part of its services, Kootenai Health collects, maintains, and stores highly sensitive personal and medical information belonging to its patients, including, but not limited to: names, Social Security numbers, dates of birth, and telephone numbers (collectively, "personally identifying information" or "PII"), and medical information, diagnosis and treatment information, health insurance information, and medial record numbers ("private health information" or "PHI") (collectively, with PII, "Private Information").

3.       On March 2, 2024, Kootenai Health noticed unusual activity disrupting access to certain IT systems.[2]

4.       Kootenai Health engaged a cybersecurity expert to investigate the incident, who discovered that an unknown actor had gained unauthorized access to data stored in Kootenai Health's network on February 22, 2024.[3]

5.       By August 1, 2024, Kootenai Health determined that the compromised information included current and former patients' names, dates of birth, Social Security numbers, driver's license

---

1 *See* https://business.cdachamber.com/list/member/kootenai-health-541 (last accessed August 21, 2024).

2 *See* https://www.kh.org/notice-of-data-security-incident/ (last accessed August 22, 2024).

3 *Id.*

**CLASS ACTION COMPLAINT**- 2

or government-issued identification numbers, medical record numbers, medical treatment and condition information, medical diagnoses, and health insurance information.[4]

6.      On August 12, 2024, Kootenai Health sent Data Breach notices to individuals whose information was believed to have been accessed in this incident, including Plaintiffs and Class members.

7.      As Kootenai Health stored and handled such highly sensitive Private Information, it had a duty and obligation to safeguard this information and prevent unauthorized third parties from accessing this data.

8.      Ultimately, Kootenai Health failed to fulfill these obligations as an unauthorized party breached Kootenai Health's information systems and databases and accessed vast quantities of Private Information belonging to Plaintiffs and Class members. This breach and the successful exfiltration of Private Information were direct, proximate, and foreseeable results of multiple failings on the part of Kootenai Health.

9.      The Data Breach occurred because Kootenai Health inexcusably failed to implement reasonable security protections to safeguard its information systems and databases. Prior to the Data Breach, Kootenai Health failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiffs and Class members been made aware of this fact, they would have never provided their Private Information to Kootenai Health.

10.     Kootenai Health's meager attempt to ameliorate the effects of the Data Breach with *one year* of complimentary credit monitoring is woefully inadequate. Much of the Private

---

4 *Id.*

**CLASS ACTION COMPLAINT**- 3

Information that was stolen is immutable, and a single year of credit monitoring is nothing in the face of a life-long heightened risk of identity theft.

11.     As a result of Kootenai Health's negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy its contractual, statutory, and common-law obligations, Plaintiffs and Class members suffered injuries including, but not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including, but not limited to, the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

- Time needed to change usernames and passwords on their accounts;

- Time needed to investigate, correct, and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach;

- Charges and fees associated with fraudulent charges on their accounts; and

- The continued and increased risk of compromise to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Private Information.

12.     Accordingly, Plaintiffs bring this action on behalf of all those similarly situated to seek relief for the consequences of Defendant's failure to reasonably safeguard Plaintiffs' and Class members' Private Information; its failure to reasonably provide timely notification that Plaintiffs' and Class members' Private Information had been compromised by an unauthorized third party; and

**CLASS ACTION COMPLAINT**- 4

for intentionally and unconscionably deceiving Plaintiffs and Class members concerning the status, safety, location, access, and protection of their Private Information.

## PARTIES

### Plaintiff Daniel Ferguson

13.     Plaintiff Daniel Ferguson is a resident of Spokane, Washington and has been a patient at Kootenai Health since 2019.

### Plaintiff Pam Gage

14.     Plaintiff Pam Gage is a resident of Post Falls, Idaho and is a former patient at Kootenai Health between November 2022 and December 2023.

### Defendant Kootenai Health

15.     Defendant Kootenai Health is an Idaho Non-Profit Corporation with its principal place of business at 2003 Kootenai Health Way, Coeur d'Alene, ID 83814-6051. Kootenai Health conducts business in this County and throughout Idaho State.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 Class members, and one or more members of the classes are residents of a different state than the Defendant. The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

17.     This Court has personal jurisdiction over Defendant because it is headquartered in this District.

**CLASS ACTION COMPLAINT**- 5

18.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), as Defendant resides, transacts business, committed an illegal or tortious act, has an agent, and/or can be found in this District.

## FACTUAL ALLEGATIONS

### A.     Kootenai Health – Background

19.     Kootenai Health is an Idaho-based regional medical referral center, compromised of 30 locations providing services for more than 25 clinical specialties, such as family medicine, cardiology, orthopedics, and surgery.[5] In 2023, it achieved over 17,000 inpatient discharges and served over 63,000 patients in its emergency department. As part of its operations, Defendant collects, maintains, and stores the highly sensitive PII and medical information provided by its current and former patients, including, but not limited to: names, Social Security numbers, dates of birth, telephone number, medical information, diagnosis and treatment information, health insurance information, and medical record numbers.

20.     On information and belief, Kootenai Health had failed to implement necessary data security safeguards at the time of the Data Breach. This failure resulted in a third party's unauthorized access of the Private Information of Kootenai Health's current and past patients—Plaintiffs and Class members.

21.     Current and former patients of Defendant, such as Plaintiffs, made their Private Information available to Kootenai Health with the reasonable expectation that any entity with access to this information would keep that sensitive and personal information confidential and secure from

---

5 *See* https://www.kh.org/mission-vision-and-values/facts-and-community-reports/ (last accessed August 22, 2024).

**CLASS ACTION COMPLAINT**- 6

illegal and unauthorized access. And, in the event of any unauthorized access, that Kootenai Health would provide them with prompt and accurate notice.

22.     This expectation was objectively reasonable and based on an obligation imposed on Kootenai Health by statute, regulations, industrial custom, and standards of general due care.

23.     Unfortunately for Plaintiffs and Class members, Kootenai Health failed to carry out its duty to safeguard sensitive Private Information and provide adequate data security. As a result, it failed to protect Plaintiffs and Class members from having their Private Information accessed during the Data Breach.

**B.     The Data Breach**

24.     According to the Notice of Data Breach provided by Defendant, an unauthorized party accessed Plaintiffs' and Class members' sensitive personal information on February 22, 2024. On May 2, 2024, Kootenai Health commenced an investigation to determine if files involved in the Data Breach contained personal information of its past and current patients.

25.     On August 1, 2024, Kootenai Health determined that the Data Breach impacted Private Information belonging to past or current Kootenai Health patients.

26.     Kootenai Health confirmed that Plaintiffs' and Class members' names, dates of birth, Social Security numbers, driver's license or government-issued identification numbers, medical record numbers, medical treatment and condition information, medical diagnoses, and health insurance information may have been accessed by an unauthorized party.

27.     On August 12, 2024, more than 102 days *after* Kootenai Health first discovered the breach, Kootenai Health dispatched notices to all individuals affected by this data security incident.

**CLASS ACTION COMPLAINT**- 7

C.   **Kootenai Health's Many Failures Both Prior to and Following the Breach**

28.    Defendant collects and maintains vast quantities of Private Information belonging to Plaintiffs and Class members as part of its normal operations. The Data Breach occurred as direct, proximate, and foreseeable results of multiple failings on the part of Defendant.

29.    First, Defendant inexcusably failed to implement reasonable security protections to safeguard its information systems and databases.

30.    Second, Defendant failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiffs and Class members been aware that Defendant did not have adequate safeguards in place to protect such sensitive Private Information, they would have never provided such information to Defendant.

31.    Third, Defendant did not inform Plaintiffs and Class members that their information was stolen until more than 102 days after its agents first discovered the intrusion. This delay in informing Kootenai Health's current and former patients virtually ensured that the unauthorized parties who accessed this Private Information could monetize, misuse and/or disseminate that Private Information before Plaintiffs and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiffs and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

32.    Fourth, Defendant's attempt to ameliorate the effects of this Data Breach with a single year of complimentary credit monitoring is inadequate. Plaintiffs' and Class members' Private Information was accessed and acquired by an unauthorized party. As a consequence, they face the real, immediate, and likely danger of identity theft and misuse of their Private Information. And this can, and in some circumstances already has, caused irreparable harm to their personal, financial,

**CLASS ACTION COMPLAINT**- 8

reputational, and future well-being. This harm is even more acute because much of the accessed

Private Information, such as healthcare data, is immutable.

33.     In short, Defendant's myriad failures, including the failure to timely notify Plaintiffs

and Class members that their personal and medical information had been accessed without

permission due to Defendant's security failures, allowed unauthorized individuals to access,

misappropriate, and misuse Plaintiffs' and Class members' Private Information for months before

Defendant finally granted victims the opportunity to take proactive steps to defend themselves and

mitigate the near- and long-term consequences of the Data Breach.

**D.    Data Breaches Pose Significant Threats**

34.     Data breaches have become a constant threat that, without adequate safeguards, can

expose personal data to malicious actors. It is well known that PII, Social Security numbers in

particular, are an invaluable commodity and a frequent target of hackers.

35.     In 2022, the Identity Theft Resource Center's Annual End-of-Year Data Breach

Report listed 1,802 total compromises involving 422,143,312 victims for 2022, which was just fifty

compromises short of the current record set in 2021.[6] The HIPAA Journal's 2022 Healthcare Data

Breach Report reported 707 compromises involving healthcare data, which is just eight shy of the

record of 715 set in 2021 and still double that of the number of similar such compromises in 2017

and triple the number of compromises in 2012.[7]

---

6 *2022 End of Year Data Breach Report*, Identity Theft Resource Center (January 25, 2023), available at:

https://www.idtheftcenter.org/publication/2022-data-breach-
report/?utm_source=press+release&utm_medium=web&utm_campaign=2022+Data+Breach+Report+ (last accessed
December 11, 2023).

7 *2022 Healthcare Data Breach Report*, The HIPAA Journal (January 24, 2023), available at:
https://www.hipaajournal.com/2022-healthcare-data-breach-report/ (last accessed December 11, 2023).

**CLASS ACTION COMPLAINT**- 9

36.    Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 1,862 in 2021, to 2022's total of 1,802.[8] The number of impacted individuals has also risen precipitously from approximately 318 million in 2015 to 422 million in 2022, which is an increase of nearly 50%. [9]



37.    This stolen PII is then routinely traded on dark web black markets as a simple commodity, with Social Security numbers being so ubiquitous that they are sold for as little as $2.99 apiece and passports retail for as little as $15 apiece.[10]

---

[8] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2022*, Statista (Jan. 2023), available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed (last accessed December 11, 2023).

[9] *Id.*

[10] *What is your identity worth on the dark web?* Cybernews (September 28, 2021), available at: https://cybernews.com/security/whats-your-identity-worth-on-dark-web/ (last accessed December 11, 2023).

**CLASS ACTION COMPLAINT**- 10

38.     In addition, the severity of the consequences of a compromised Social Security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory elements can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

> [a] dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[11]

39.     This is exacerbated by the fact that the problems arising from a compromised Social Security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing his or her number unless and until it is actually misused and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

> Keep in mind that a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[12]

40.     The most sought after and expensive information on the dark web are stolen medical records, which command prices from $250 to $1,000 each.[13] Medical records are considered the

---

11 Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed December 11, 2023).

12 *Id.*

13 Paul Nadrag, *Industry Voices—Forget credit card numbers. Medical records are the hottest items on the dark web*, Fierce Healthcare (January 26, 2021), available at: https://www.fiercehealthcare.com/hospitals/industry-voices-forget-credit-card-numbers-medical-records-are-hottest-items-dark-web (last accessed December 11, 2023).

**CLASS ACTION COMPLAINT**- 11

most valuable because unlike credit cards, which can easily be canceled, and Social Security numbers, which can be changed, medical records contain "a treasure trove of unalterable data points, such as a patient's medical and behavioral health history and demographics, as well as his health insurance and contact information."[14] With this bounty of ill-gotten information, cybercriminals can steal victims' public and insurance benefits and bill medical charges to victims' accounts.[15] Cybercriminals can also change the victims' medical records, which can lead to misdiagnosis or mistreatment when the victims seek medical treatment.[16] Victims of medical identity theft could even face prosecution for drug offenses when cybercriminals use their stolen information to purchase prescriptions for sale in the drug trade.[17]

41.     The wrongful use of compromised medical information is known as medical identity theft and the damage resulting from medical identity theft is routinely far more serious than the harm resulting from the theft of simple PII. Victims of medical identity theft spend an average of $13,500 to resolve problems arising from medical identity theft and there are currently no laws limiting a consumer's liability for fraudulent medical debt (in contrast, a consumer's liability for fraudulent credit card charges is capped at $50).[18] It is also "considerably harder" to reverse the damage from the aforementioned consequences of medical identity theft.[19]

---

14 *Id.*

15 *Medical Identity Theft in the New Age of Virtual Healthcare*, IDX (March 15, 2021), available at https://www.idx.us/knowledge-center/medical-identity-theft-in-the-new-age-of-virtual-healthcare (last accessed December 11, 2023). *See also* Michelle Andrews, *The Rise of Medical Identity Theft*, Consumer Reports (August 25, 2016), available at https://www.consumerreports.org/health/medical-identity-theft-a1699327549/ (last accessed December 11, 2023).

16 *Id.*

17 *Id.*

18 Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html (last accessed December 11, 2023).

19 *Id.*

**CLASS ACTION COMPLAINT**- 12

42.    Instances of Medical identity theft have grown exponentially over the years from approximately 6,800 cases in 2017 to just shy of 43,000 in 2021, which represents a seven-fold increase in the crime.[20]

43.    In light of the dozens of high-profile health and medical information data breaches that have been reported in recent years, entities like Defendant charged with maintaining and securing patient PII should know the importance of protecting that information from unauthorized disclosure. Indeed, Defendant knew, or certainly should have known, of the recent and high-profile data breaches in the health care industry: UnityPoint Health, Lifetime Healthcare, Inc., Community Health Systems, Kalispell Regional Healthcare, Anthem, Premera Blue Cross, Change Healthcare and many others.[21]

44.    In addition, the Federal Trade Commission ("FTC") has brought dozens of cases against companies that have engaged in unfair or deceptive practices involving inadequate protection of consumers' personal data, including recent cases concerning health-related information against LabMD, Inc., SkyMed International, Inc., and others. The FTC publicized these enforcement actions to place companies like Defendant on notice of its obligation to safeguard customer and patient information.[22]

45.    Given the nature of Defendant's Data Breach, as well as the long delay in notification to the Class, it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the unauthorized parties who

---

[20] *Id.*

[21] *See e.g.*, *Healthcare Data Breach Statistics*, HIPAA Journal, available at: https://www.hipaajournal.com/healthcare-data-breach-statistics  (last accessed December 11, 2023).

[22] *See e.g.*, *In the Matter of SKYMED INTERNATIONAL, INC.*, C-4732, 1923140 (F.T.C. Jan. 26, 2021).

**CLASS ACTION COMPLAINT**- 13

possess Plaintiffs' and Class members' Private Information can easily obtain Plaintiffs' and Class members' tax returns or open fraudulent credit card accounts in Class members' names.

46.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[23] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

47.     To date, Defendant has offered its consumers only one year of identity theft monitoring services. The offered services are inadequate to protect Plaintiffs and Class members from the threats they will face for years to come, particularly in light of the Private Information at issue here.

48.     Despite the prevalence of public announcements of data breach and data security compromises, its own acknowledgment of the risks posed by data breaches, and its own acknowledgment of its duties to keep Private Information private and secure, Defendant failed to take appropriate steps to protect Plaintiffs' and Class members' Private Information from misappropriation. As a result, the injuries to Plaintiffs and Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for its current and former patients.

---

23 *See* Jesse Damiani, *Your Social Security Number Costs $4 On the Dark Web, New Report Finds*, Forbes (Mar 25, 2020), available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1 (last accessed December 11, 2023). *See also Why Your Social Security Number Isn't as Valuable as Your Login Credentials*, Identity Theft Resource Center (June 18, 2021), available at https://www.idtheftcenter.org/post/why-your-social-security-number-isnt-as-valuable-as-your-login-credentials/ (last accessed December 11, 2023).

**CLASS ACTION COMPLAINT**- 14

**E.   Kootenai Health Had a Duty and Obligation to Protect Private Information**

49.   Defendant has an obligation to protect the Private Information belonging to Plaintiffs and Class members. First, this obligation was mandated by government regulations and state laws, including HIPAA and FTC rules and regulations. Second, this obligation arose from industry standards regarding the handling of sensitive PII and medical records. And, third, Defendant imposed such an obligation on itself with its promises regarding the safe handling of data.[24] Plaintiffs and Class members provided, and Defendant obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

**1.   HIPAA Requirements and Violation**

50.   HIPAA requires, *inter alia,* that Covered Entities and Business Associates implement and maintain policies, procedures, systems and safeguards that ensure the confidentiality and integrity of consumer and patient PII and PHI, protect against any reasonably anticipated threats or hazards to the security or integrity of consumer and patient PII and PHI, regularly review access to data bases containing protected information, and implement procedures and systems to detect, contain, and correct any unauthorized access to protected information. *See* 45 CFR § 164.302–.318.

51.   HIPAA, as applied through federal regulations, also requires private information to be stored in a manner that renders it, "unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology . . . ." 45 CFR § 164.402.

52.   The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414 requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and ***in no case later than 60 days following discovery of the breach.***" *Id.* (emphasis added).

**CLASS ACTION COMPLAINT**- 15

53.    Since Defendant collected and stored PII and PHI from its patients, it is subject to HIPAA.

54.    Upon information and belief, Defendant failed to implement and/or maintain procedures, systems, and safeguards to protect Plaintiffs' and Class members' Private Information from unauthorized access and disclosure.

55.    Upon information and belief, Defendant's security failures include, but are not limited to:

a.    Failing to maintain an adequate data security system to prevent data loss;

b.    Failing to mitigate the risks of a Data Breach and loss of data;

c.    Failing to ensure the confidentiality and integrity of the electronic protected health information Defendant creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d.    Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.    Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f.    Failing to identify and respond to suspected or known security incidents;

g.    Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h.    Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i.    Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy

---

24 *See Notice of Privacy Practices*, available at https://www.kh.org/notice-of-privacy-practices/ (last accessed August 22, 2024).

**CLASS ACTION COMPLAINT**- 16

rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j.     Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce, in violation of 45 CFR 164.306(a)(94); and

k.     Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502–.535.

56.    Upon information and belief, Defendant also failed to store the information it collected in a manner that rendered it, "unusable, unreadable, or indecipherable to unauthorized persons," in violation of 45 CFR § 164.402.

57.    Defendant also violated the HIPAA Breach Notification Rule since it did not inform Plaintiffs and Class members about the breach until more than 102 days after it first discovered the breach.

58.    Because Defendant has failed to comply with HIPAA, while monetary relief may cure some of Plaintiffs' and Class members' injuries, injunctive relief is also necessary to ensure Defendant's approach to information security is adequate and appropriate going forward. Defendant still maintains Private Information concerning its current and former patients, including Plaintiffs and Class members. Without the supervision of the Court through injunctive relief, Plaintiffs' and Class members' Private Information remains at risk of subsequent data breaches.

**2.     FTC Act Requirements and Violations**

59.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers'

sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

60.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[25] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[26] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[27]

61.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

62.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate

---

25 *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n.

(October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last accessed August 22, 2024).

26 *Id.*

27 *Id.*

**CLASS ACTION COMPLAINT**- 18

measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

63.    Additionally, the FTC Health Breach Notification Rule obligates companies that suffered a data breach to provide notice to every individual affected by the data breach, as well as notifying the media and the FTC. *See* 16 CFR 318.1–.9.

64.    As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

65.    Defendant was fully aware of its obligation to protect the Private Information of its current and former patients, including Plaintiffs and the Class, and on information and belief, Defendant is a sophisticated and technologically savvy entity that relies extensively on technology systems and networks to maintain its practice, including storing its patients' PII, protected health information, and medical information in order to operate its business.

66.    Defendant had and continues to have a duty to exercise reasonable care in collecting, storing, and protecting the Private Information from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between Defendant and Plaintiffs and Class members. Defendant alone had the exclusive ability to implement adequate security measures to its cyber security network to secure and protect Plaintiffs' and Class members' Private Information.

**CLASS ACTION COMPLAINT**- 19

### 3.      Industry Standards and Noncompliance

67.      As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information that they collect and maintain.

68.      Some industry best practices that should be implemented by businesses dealing with sensitive PHI like Defendant include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

69.      Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

70.      Defendant should have also followed the minimum standards of any one of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

**CLASS ACTION COMPLAINT**- 20

71.     Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

### 4.     Defendant's Own Stated Policies and Promises

72.     Defendant's own published privacy policy[28] states that:

- We are committed to protecting your privacy, and that includes protecting the privacy of any data you share with us..

- Our goal is always to maintain the highest levels of privacy and security with your personal data, in keeping with the principles of the Federal Trade Commission Act and related regulations, the General Data Protection Regulation, and applicable local privacy laws.

73.     Clearly, Defendant failed to live up to its own stated policies and promises with regards to data privacy and data security as an unauthorized party was able to infiltrate its systems and access the Private Information belonging to Plaintiffs and Class members. Further, Defendant delayed more than three months between discovering the breach and issuing notice. This delay was beyond what is reasonable acceptable or statutorily mandated.

### F.     Plaintiffs and the Class Suffered Harm Resulting from the Data Breach

74.     Like any data hack, the Data Breach presents major problems for all affected.[29]

75.     The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account, run

---

28 *See* https://www.kh.org/online-policy/ (last accessed August 22, 2024).

**CLASS ACTION COMPLAINT**- 21

up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[30]

76.     The ramifications of Defendant's failure to properly secure Plaintiffs' and Class members' Private Information are severe. Identity theft occurs when someone uses another person's financial, and personal information, such as that person's name, address, Social Security number, and other information, without permission in order to commit fraud or other crimes.

77.     According to data security experts, one out of every four data breach notification recipients becomes a victim of identity fraud.

78.     Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

79.     Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiffs and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. According to a recent study published in the scholarly journal *Preventive Medicine Reports*, public and corporate data breaches correlate to an increased risk of identity theft for victimized consumers.[31] The same study also found that identity

---

29 Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers (last accessed December 11, 2023).

30*Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft (last accessed December 11, 2023).

31 David Burnes, Marguerite DeLiema, Lynn Langton, *Risk and protective factors of identity theft victimization in the United States*, Preventive Medicine Reports, Volume 17 (January 23, 2020), available at https://www.sciencedirect.com/science/article/pii/S2211335520300188?via%3Dihub (last accessed December 11, 2023).

**CLASS ACTION COMPLAINT**- 22

theft is a deeply traumatic event for the victims, with more than a quarter of victims still experiencing sleep problems, anxiety, and irritation even six months after the crime.[32]

80.     There is also a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' Private Information will do so at a later date or re-sell it.

81.     Data breaches have also proven to be costly for affected organizations as well, with the average cost to resolve being $4.45 million dollars in 2023.[33] The average cost to resolve a data breach involving health information, however, is more than double this figure at $10.92 million.[34]

82.     The theft of medical information, beyond the theft of more traditional forms of PII, is especially harmful for victims. Medical identity theft, the misuse of stolen medical records and information, has seen a seven-fold increase over the last five years and this explosive growth far outstrips the increase in incidence of traditional identity theft.[35] Medical Identity Theft is especially nasty for victims because of the lack of laws that limit a victim's liabilities and damages from this type of identity theft (*e.g.*, a victim's liability for fraudulent credit card charges is capped at $50), the unalterable nature of medical information, the sheer costs involved in resolving the fallout from a

---

32 *Id.*

33 *Cost of a Data Breach Report 2023*, IBM Security, available at https://www.ibm.com/reports/data-breach?utm_content=SRCWW&p1=Search&p4=43700072379268622&p5=p&gclid=CjwKCAjwxOymBhAFEiwA nodBLGiGtWfjX0vRlNbx6p9BpWaOo9eZY1i6AMAc6t9S8IKsxdnbBVeUbxoCtk8QAvD_BwE&gclsrc=aw.ds (last accessed December 11, 2023).

34 *Id.*

35 Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html (last accessed December 11, 2023).

medical identity theft (victims spend, on average, $13,500 to resolve problems arising from this crime), and the risk of criminal prosecution under anti-drug laws.[36]

83.    In response to the Data Breach, Defendant offered to provide certain individuals whose Private Information was exposed in the Data Breach with just a single year of credit monitoring through IDX, A Zero Fox Company. However, this is much shorter than what is necessary to protect against the lifelong risk of harm imposed on Plaintiffs and Class members by Defendant's failures.

84.    Moreover, the credit monitoring offered by Defendant is fundamentally inadequate to protect them from the injuries resulting from the unauthorized access and exfiltration of their sensitive Private Information.

85.    Here, due to the Breach, Plaintiffs and Class members have been exposed to injuries that include, but are not limited to:

   a.    Theft of Private Information;

   b.    Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach;

   c.    Damages arising from the inability to use accounts that may have been compromised during the Data Breach;

   d.    Costs associated with spending time to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including, but not limited to, lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they

---

36 *Id.*

**CLASS ACTION COMPLAINT**- 24

were fortunate enough to learn of the Data Breach despite Defendant's delay in disseminating notice in accordance with state law;

e.     The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and

f.     The loss of Plaintiffs' and Class members' privacy.

86.     Plaintiffs and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being accessed by cybercriminals, risks that will not abate within a mere year: the unauthorized access of Plaintiffs' and Class members' Private Information, especially their Social Security numbers and bank account numbers, puts Plaintiffs and the Class at risk of identity theft indefinitely, and well beyond the limited period of credit monitoring that Defendant offered victims of the Breach.

87.     As a direct and proximate result of Defendant's acts and omissions in failing to protect and secure Private Information, Plaintiffs and Class members have been placed at a substantial risk of harm in the form of identity theft and have incurred and will incur actual damages in an attempt to prevent identity theft.

88.     Plaintiffs retain an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach on behalf of both themselves and similarly situated individuals whose Private Information was accessed in the Data Breach.

G.     **EXPERIENCES SPECIFIC TO PLAINTIFFS**

**Plaintiff Daniel Ferguson**

89.     Plaintiff Daniel Ferguson was a surgery patient at Kootenai Outpatient Surgery between 2019 and 2021.

**CLASS ACTION COMPLAINT**- 25

90.     As a condition of his use of Defendant's services, Plaintiff Ferguson was required to provide his Private Information to Defendant.

91.     Plaintiff Ferguson became aware of the Data Breach through the notice Defendant mailed to him. He learned that information such as his name, date of birth, Social Security number, driver's license number, medical record number, medical treatment and condition information, medical diagnoses, and health insurance information were compromised in the breach.

92.     After the breach, Plaintiff Ferguson experienced an increase in the number of spam phone calls and marketing emails.

93.     As a result of the Data Breach and the resulting suspicious activity, Plaintiff Ferguson has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. He has also spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including, but not limited to, work and recreation.

94.     As a result of the Data Breach, Plaintiff Ferguson has suffered anxiety due to the public dissemination of his personal information, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his Private Information for purposes of identity theft and fraud.  Plaintiff Ferguson is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

95.     Plaintiff Ferguson suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to: (a) damage to and diminution in the value of his Private Information, a form of property that Defendant obtained from

**CLASS ACTION COMPLAINT**- 26

him; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

96.      As a result of the Data Breach, Plaintiff Ferguson anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

**Plaintiff Pamela Gage**

97.      Plaintiff Pamela Gage was a patient at Kootenai Health between November 2022 and December 2023.

98.      As a condition of her use of Defendant's services, Plaintiff Gage was required to provide her Private Information to Defendant.

99.      Plaintiff Gage became aware of the Data Breach through the notice Defendant mailed to her. She learned that information such as her name, date of birth, Social Security number, driver's license number, medical record number, medical treatment and condition information, medical diagnoses, and health insurance information were compromised in the breach.

100.      As a result of the Data Breach and the resulting suspicious activity, Plaintiff Gage has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. She has also spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including, but not limited to, work and recreation.

101.      As a result of the Data Breach, Plaintiff Gage has suffered anxiety due to the public dissemination of her personal information, which she believed would be protected from unauthorized

**CLASS ACTION COMPLAINT**- 27

access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her

Private Information for purposes of identity theft and fraud. Plaintiff Gage is concerned about

identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from

the Data Breach.

102.    Plaintiff Gage suffered actual injury from having her Private Information

compromised as a result of the Data Breach including, but not limited to: (a) damage to and

diminution in the value of her Private Information, a form of property that Defendant obtained from

her; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from

the increased risk of identity theft and fraud.

103.    As a result of the Data Breach, Plaintiff Gage anticipates spending considerable time

and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

And, as a result of the Data Breach, she is at a present risk and will continue to be at increased risk

of identity theft and fraud for years to come.

## V.    CLASS ALLEGATIONS

104.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to

the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the

following class and subclasses:

> **Nationwide Class:** All persons in the United States whose Private
> Information was accessed in the Data Breach (the "Nationwide Class").
>
> **Idaho Class:** All persons who are residents of the State of Idaho whose
> Private Information was accessed in the Data Breach (the "Idaho
> Subclass").
>
> **Washington Class:** All persons who are residents of the State of
> Washington whose Private Information was accessed in the Data Breach
> (the "Washington Subclass").

**CLASS ACTION COMPLAINT**- 28

105.     Specifically excluded from the Classes are Defendant; its officers, directors, or employees; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant. Also excluded from the Classes are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

106.     <u>Class Identity</u>: The members of the Classes are readily identifiable and ascertainable. Defendant and/or its affiliates, among others, possess the information to identify and contact Class members.

107.     <u>Numerosity</u>: The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, based on information and belief, the Nationwide Class of approximately 480,000 individuals whose data was compromised in the Data Breach.

108.     <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the members of the classes because all Class members had their PII and PHI accessed in the Data Breach and were harmed as a result.

109.     <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have no interest antagonistic to those of the classes and is aligned with Class members' interests because Plaintiffs were subject to the same Data Breach as Class members and face similar threats due to the Data Breach as Class members. Plaintiffs have also retained competent counsel with significant experience litigating complex class actions, including Data Breach cases involving multiple classes.

**CLASS ACTION COMPLAINT**- 29

110.  <u>Commonality and Predominance</u>: There are questions of law and fact common to the classes. These common questions predominate over any questions affecting only individual Class members. The common questions of law and fact include, without limitation:

a.  Whether Defendant owed Plaintiffs and Class members a duty to implement and maintain reasonable security procedures and practices to protect their personal information;

b.  Whether Defendant received a benefit without proper restitution, making it unjust for Defendant to retain the benefit without commensurate compensation;

c.  Whether Defendant acted negligently in connection with the monitoring and/or protection of Plaintiffs' and Class members' PII;

d.  Whether Defendant breached its duty to implement reasonable security systems to protect Plaintiffs' and Class members' PII;

e.  Whether Defendant's breach of its duty to implement reasonable security systems directly and/or proximately caused damages to Plaintiffs and Class members;

f.  Whether Defendant adequately addressed and fixed the vulnerabilities that enabled the Data Breach;

g.  When Defendant learned of the Data Breach and whether its response was adequate;

h.  Whether Plaintiffs and other Class members are entitled to credit monitoring and other injunctive relief;

**CLASS ACTION COMPLAINT**- 30

i.      Whether Defendant provided timely notice of the Data Breach to

Plaintiffs and Class members; and,

j.      Whether Class members are entitled to compensatory damages, punitive

damages, and/or statutory or civil penalties as a result of the Data Breach.

111.    Defendant has engaged in a common course of conduct, and Class members

have been similarly impacted by Defendant's failure to maintain reasonable security

procedures and practices to protect customers' PII and PHI, as well as Defendant's failure to

timely alert affected customers to the Data Breach.

112.    <u>Superiority</u>: A class action is superior to other available methods for the fair and

efficient adjudication of the controversy. Class treatment of common questions of law and fact

is superior to multiple individual actions or piecemeal litigation. Absent a class action, most if

not all Class members would find the cost of litigating their individual claims prohibitively

high and have no effective remedy. The prosecution of separate actions by individual Class

members would create a risk of inconsistent or varying adjudications with respect to individual

Class members and risk inconsistent treatment of claims arising from the same set of facts and

occurrences.

Plaintiffs know of no difficulty likely to be encountered in the maintenance of this

action as a class action under Federal Rule of Civil Procedure 23.

### VI.    CLAIMS FOR RELIEF

### <u>COUNT I</u>
### Negligence
*(On Behalf of Plaintiffs and the Nationwide Class or Alternatively State-Specific*
*Subclasses)*

113.    Plaintiffs repeat and reallege every allegation set forth in the preceding

**CLASS ACTION COMPLAINT**- 31

paragraphs.

114.    Defendant owed Plaintiffs and Class members a duty to exercise reasonable care in protecting their PII and PHI from unauthorized disclosure or access. Defendant breached its duty of care by failing to implement reasonable security procedures and practices to protect this PII and PHI. Among other things, Defendant failed to: (i) implement security systems and practices consistent with federal and state laws and guidelines; (ii) implement security systems and practices consistent with industry norms; (iii) timely detect the Data Breach; and (iv) timely disclose the Data Breach to impacted customers.

115.    Defendant knew or should have known that Plaintiffs' and Class members' PII and PHI was highly sought after by cyber criminals and that Plaintiffs and Class members would suffer significant harm if their PII and PHI was compromised by hackers.

116.    Defendant also knew or should have known that timely detection and disclosure of the Data Breach was required and necessary to allow Plaintiffs and Class members to take appropriate actions to mitigate the resulting harm. These efforts include, but are not limited to, freezing accounts, changing passwords, monitoring credit scores/profiles and their health insurance carriers for fraudulent charges, contacting financial institutions, and cancelling or monitoring government-issued IDs such as passports and driver's licenses.

117.    Defendant had a special relationship with Plaintiffs and Class members who entrusted Defendant with several pieces of PII and PHI. Defendant's customers were required to provide PII and PHI when purchasing or attempting to purchase Defendant's products and services. Plaintiffs and Class members were led to believe Defendant would take reasonable precautions to protect their PII and PHI and would timely inform them if their PII and PHI was compromised, which Defendant failed to do.

**CLASS ACTION COMPLAINT**- 32

118.    The harm that Plaintiffs and Class members suffered (and continue to suffer) was the reasonably foreseeable product of Defendant's breach of its duty of care. Defendant failed to enact reasonable security procedures and practices, and Plaintiffs and Class members were the foreseeable victims of data theft that exploited the inadequate security measures. The PII and PHI accessed in the Data Breach is precisely the type of information that cyber criminals seek and use to commit cyber crimes.

119.    But-for Defendant's breach of its duty of care, the Data Breach would not have occurred and Plaintiffs' and Class members' PII and PHI would not have been accessed by an unauthorized and malicious party.

120.    As a direct and proximate result of the Defendant's negligence, Plaintiffs and Class members have been injured and are entitled to damages in an amount to be proven at trial. Such damages include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the compromised PII and PHI; illegal sale of the compromised PII and PHI on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of their PII and PHI; lost value of unauthorized access to their PII and PHI; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

**CLASS ACTION COMPLAINT**- 33

## COUNT II
### Violation of the Washington Consumer Protection Act
### RCW 19.86.010, *et seq.*,
#### *(On Behalf of the Washington Subclasses)*

121.    Plaintiffs incorporate by reference the foregoing allegations of fact as if fully set forth herein.

122.    The Washington State Consumer Protection Act, RCW 19.86.020 (the "CPA") prohibits any "unfair or deceptive acts or practices" in the conduct of any trade or commerce as those terms are described by the CPA and relevant case law.

123.    Defendant is a "person" as described in RWC 19.86.010(1).

124.    Defendant engages in "trade" and "commerce" as described in RWC 19.86.010(2) in that they engage in the sale of services and commerce directly and indirectly affecting the people of the State of Washington.

125.    By virtue of the above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendant engaged in unlawful, unfair and fraudulent practices within the meaning, and in violation of, the CPA, in that Defendant's practices were injurious to the public interest because they injured other persons, had the capacity to injure other persons, and have the capacity to injure other persons.

126.    In the course of conducting their business, Defendant committed "unfair or deceptive acts or practices" by, inter alia, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs' and Class Members' Private Information, and violating the common law

**CLASS ACTION COMPLAINT**- 34

alleged herein in the process. Plaintiffs and Class Members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices. As described above, Defendant's wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

127.    Defendant also violated the CPA by failing to timely notify and concealing from Plaintiffs and Class Members information regarding the unauthorized release and disclosure of their Private Information. If Plaintiffs and Class Members had been notified in an appropriate fashion, and had the information not been hidden from them, they could have taken precautions to safeguard and protect their Private Information, medical information, and identities.

128.    Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair or deceptive acts or practices" in violation of the CPA in that Defendant's wrongful conduct is substantially injurious to other persons, had the capacity to injure other persons, and has the capacity to injure other persons.

129.    The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in the above-described wrongful conduct.

130.    As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and their violations of the CPA, Plaintiffs and Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, inter alia, (1) an imminent, immediate and the continuing increased risk of identity theft,

**CLASS ACTION COMPLAINT**- 35

identity fraud and medical fraud—risks justifying expenditures for protective and remedial

services for which they are entitled to compensation; (2) invasion of privacy; (3) breach of the

confidentiality of their Private Information; (5) deprivation of the value of their Private

Information, for which there is a well-established national and international market; and/or (6)

the financial and temporal cost of monitoring credit, monitoring financial accounts, and

mitigating damages.

131.     Unless restrained and enjoined, Defendant will continue to engage in the above-

described wrongful conduct and more data breaches will occur. Plaintiffs, therefore, on behalf

of themselves and the Class, seek restitution and an injunction prohibiting Defendant from

continuing such wrongful conduct, and requiring Defendant to design, adopt, implement,

control, direct, oversee, manage, monitor and audit appropriate data security processes,

controls, policies, procedures protocols, and software and hardware systems to safeguard and

protect the Private Information entrusted to it.

132.     Plaintiffs, on behalf of themselves and Class Members, also seek to recover

actual damages sustained by each Class Member together with the costs of the suit, including

reasonable attorney fees. In addition, Plaintiffs, on behalf of themselves and Class Members,

request that this Court use its discretion, pursuant to RCW 19.86.090, to increase the damages

award for each Class Member by three times the actual damages sustained not to exceed

$25,000.00 per Class Member.

**COUNT III**
**Unjust Enrichment**
*(On Behalf of Plaintiffs and the Nationwide Class or Alternatively State-Specific Subclasses)*

133.     Plaintiffs repeat and reallege every allegation set forth in the preceding

paragraphs.

**CLASS ACTION COMPLAINT**- 36

134.    Plaintiffs and Class members have an interest, both equitable and legal, in the PII and PHI about them that was conferred upon, collected by, and maintained by Defendant and that was ultimately accessed in the Data Breach.

135.    Defendant was benefitted by the conferral upon it of the PII and PHI pertaining to Plaintiffs and Class members and by its ability to retain, use, and profit from that information. Defendant understood that it was in fact so benefitted.

136.    Defendant also understood and appreciated that the PII and PHI pertaining to Plaintiffs and Class members was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that PII and PHI.

137.    But for Defendant's willingness and commitment to maintain its privacy and confidentiality, that PII and PHI would not have been transferred to and entrusted with Defendant.

138.    Defendant continues to benefit and profit from its retention and use of the PII and PHI while its value to Plaintiffs and Class members has been diminished.

139.    Defendant also benefitted through its unjust conduct by selling its services for more than those services were worth to Plaintiffs and Class members, who would not have purchased Kootenai Health's products or services had they been aware that Defendant would fail to protect their PII and PHI.

140.    Defendant also benefitted through its unjust conduct by retaining money that it should have used to provide reasonable and adequate data security to protect Plaintiffs' and Class members' PII and PHI.

141.    It is inequitable for Defendant to retain these benefits.

**CLASS ACTION COMPLAINT**- 37

142.     As a result of Defendant's wrongful conduct as alleged in this Complaint (including, among things, its knowing failure to employ adequate data security measures, its continued maintenance and use of the PII and PHI belonging to Plaintiffs and Class members without having adequate data security measures, and its other conduct facilitating the theft of that PII and PHI), Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class members.

143.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiffs' and Class members' PII and PHI, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

144.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiffs and Class members in an unfair and unconscionable manner. Defendant's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

145.     The benefits conferred upon, received, and enjoyed by Defendant were not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain these benefits.

146.     Plaintiffs and Class members have no adequate remedy at law for Defendant's unjust enrichment.

Defendant is therefore liable to Plaintiffs and Class members for restitution or disgorgement in the amount of the benefit conferred on Defendant as a result of its wrongful conduct, including specifically: the value to Defendant of the PII and PHI that was compromised

**CLASS ACTION COMPLAINT**- 38

in the Data Breach; the profits Defendant is receiving from the use of that information; the amounts that Defendant overcharged Plaintiffs and Class members for its products and use of its services; and the amounts that Defendant should have spent to provide reasonable and adequate data security to protect Plaintiffs' and Class members' PII and PHI.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and Class Members, request judgment against Defendant and that the Court grant the following:

(a)     That the Court determine that Plaintiffs' claims are suitable for class treatment and certify the proposed Classes pursuant to Fed. R. Civ. P. 23;

(b)     That the Court appoint Plaintiffs as representative of the Classes;

(c)     That Plaintiffs' counsel be appointed as counsel for the Classes;

(d)     That the Court award compensatory, statutory, and punitive damages;

(e)     In the alternative, that the Court award nominal damages as permitted by law;

(f)     That the Court award injunctive or other equitable relief that directs Defendant to provide Plaintiffs and the Classes with free identity theft protection and credit monitoring, and to implement reasonable security procedures and practices to protect customers' PII and PHI that conform to relevant federal and state guidelines and industry norms;

(g)     That the Court award reasonable costs and expenses incurred in prosecuting this action, including attorneys' fees and expert fees; and

(i)     Such other relief as the Court may deem just and proper.

**CLASS ACTION COMPLAINT**- 39

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues properly triable to a jury in this case.

DATED this 11th day of September, 2024.

**HEPWORTH LAW OFFICES**

By: /s/ J. Grady Hepworth
    J. Grady Hepworth, ISB No. 10364
    2229 West State Street
    Boise, Idaho 83702
    Telephone: (208) 333-0702
    Fax: (208) 246-8655
    ghepworth@idalawyer.com
    *Attorneys for Plaintiff*

**TOUSLEY BRAIN STEPHENS PLLC**

By: /s/ Jason T. Dennett
    Jason T. Dennett, (*pro hac vice*)
    1200 Fifth Avenue, Suite 1700
    Seattle, Washington 98101
    Telephone: (206) 682.5600
    Fax: (206) 682.2992
    Jdennett@tousley.com
    *Attorneys for Plaintiff*